IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

MANAGEMENT COMPENSATION )
GROUP LEE, INC., *et al.,* )
)
      Movants, )
)
vs. )   Case No. CIV-11-967-D
)
OKLAHOMA STATE UNIVERSITY, )
)
      Respondent. )

## O R D E R

Before the Court is the Motion to Compel Nonparty to Produce Documents in Response to

Subpoena [Doc. No. 1] and Respondent's Cross-Motion to Quash Subpoena [Doc. No. 18], both

filed pursuant to Fed. R. Civ. P. 45.[1]  The motions are fully briefed and at issue.

### Factual and Procedural Background

This action seeks to enforce a subpoena issued in connection with a civil action pending in

the United States District Court for the Northern District of Texas.  The movants are third party

defendants in the foreign action, *Lincoln Life Ins. Co. v. Cowboy Athletics, Inc.*, Case No. 3:10-CV-

173-P (N.D. Tex.), and the respondent, Oklahoma State University (OSU), is a nonparty to that

action.  The Texas case concerns life insurance policies issued as part of an insured charitable

endowment program, known as the "Cowboy Gift of a Lifetime Program," to Cowboy Athletics,

Inc., which is a non-profit corporation that raises funds for OSU's athletic department.  OSU

allegedly possesses relevant documents and information relating to the initial analysis and

---

[1] The cross-motion does not comply with LCvR7.1(c), which prohibits combining a response brief and the responding party's motion in a single document.  Under the circumstances of this case, however, which solely concerns the parties' competing motions, the Court declines to strike the document and require refiling.

assessment of the program, the implementation of the program, the issuance of the insurance policies, communications between the parties to the Texas case and OSU, and allegations asserted in the third party complaint against the movants. In fact, a claim of wrongdoing by the movants in connection with the purchase of the insurance policies was first raised in a letter from OSU's president, Burns Hargis, to the insurance company dated April 17, 2009. In addition to OSU's involvement in the events underlying the Texas case, OSU allegedly has a financial interest in the outcome of that case and the success of the endowment program.

The subpoena served on OSU requests the production of 35 categories of documents. The document requests are broadly worded and accompanied by a list of 32 defined terms. OSU timely responded to the subpoena with a written objection in the form of a letter from counsel stating that the requests were overbroad and unduly burdensome and that compliance would result in significant expense. OSU also claimed that the subpoena encompassed communications and information protected by the attorney-client privilege and work product doctrine, and that identifying privileged documents and email messages would be an undue burden. OSU asserted that the requesting parties "did not take reasonable steps to avoid imposing undue burden or expense on OSU," as required Fed. R. Civ. P. 45(c)(1), and that the instructions with regard to electronically stored information (ESI) violated Rule 45(d)(1)(C). *See* Gordon Decl., Ex. 6 [Doc. No. 2-6] at 1. In addition, OSU claimed that the subpoena requested confidential and proprietary information without any protection from disclosure, and that "OSU's commercial or fund-raising efforts and important privacy interests of OSU and its donors" could be injured. *Id.* at 2. A subsequent letter from OSU's counsel also stated that the subpoena "tends to violate the First Amendment interests of OSU and its officers and employees with regard to their academic, expressive and associational rights." *See* Gordon Decl., Ex. 14 [Doc. No. 2-14].

The movants and OSU engaged in a series of communications and a meeting in Stillwater, Oklahoma, designed to resolve the objections. The parties to the Texas case also agreed on the terms of a protective order to govern the production of documents and information during discovery; the Stipulation and Agreed Protective Order was approved by the Texas court and entered on August 16, 2011. During discussions between counsel for the movants and OSU, the movants narrowed their requests and proposed a software program and search terms to assist in gathering ESI, particularly relevant email messages. The movants also agreed to allow OSU to withhold messages involving its attorneys or outside counsel for Cowboy Athletics, Inc. and to limit production to messages that pre-dated President Hargis' letter raising the possibility of litigation.

Before this action was filed, and in its response brief, OSU has stated there are 6,571 email messages responsive to the modified subpoena, and it would need to review each one individually before production to determine whether it contains privileged or confidential matter.[2] OSU asserts that "[o]nly an attorney for OSU would be able to perform this task." *See* Resp. Br. & Cross-Motion [Doc. No. 18] at 5. The costs associated with the information search have been calculated by OSU's technology department to be $1,761.24, and an additional expense of $2,141,60 would be incurred if manual recovery of certain files is needed. Also, OSU's proposed review of 6,571 messages is estimated to require 54.8 hours of in-house counsel's time, to the exclusion of his other duties, at an estimated cost of $9,590.00 based on "a minimal hourly rate of $175.00 per hour." *See* Fern Decl. [Doc. No. 18-4], ¶ 10.

The movants seek by their Motion an order compelling OSU to produce all responsive non-electronic documents, all responsive emails created prior to the date of President Hargis' letter that

---

[2] In addition to privileged, work-product, proprietary or private donor information, OSU asserts for the first time in its brief that the subpoena might also implicate students' privacy rights under the Federal Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g *et seq.*, and implementing regulations.

can be identified utilizing the search method stated in correspondence from the movants' counsel dated June 9, 2011, but excluding attorneys,[3] and all emails from or to any member of the OSU Board of Regents concerning the endowment program. *See* Motion to Compel [Doc. No. 1] at 16. The movants also ask that OSU be ordered to provide a privilege log listing any documents withheld from production. Finally, the movants request an award of reasonable attorneys fees and costs incurred in connection with the Motion.

OSU has moved to quash the subpoena as "overbroad and unduly burdensome in that it requires OSU to review and produce a vast number of documents." *See* Resp. Br. & Cross-Motion [Doc. No. 18] at 2. In particular, OSU notes that the first numbered document request seeks all documents and communications by, between or among thirty-eight persons or entities regarding any "Gift Program," as defined in the instructions.[4] OSU reasserts its objection regarding privileged communications or work-product materials and states "[i]t would be an undue burden for OSU to attempt to locate and review the approximately 6,571 individual email messages to determine whether they are privileged or relate to litigation involving OSU." *See id.* at 4-5. OSU also reasserts its objection to disclosing proprietary information regarding its fund-raising efforts or donors' private information. Finally, OSU contends that if production is ordered, the movants should be required to pay the costs of compliance, including the expenses of the ESI search and a reasonable attorney's fee. *See id.* at 6.[5]

---

[3] This description of electronic documents represents a modification of the June 9, 2011, request that appears in subsequent correspondence from counsel dated July 13, 2011.

[4] OSU states that the request covers a time period of more than three and one-half years, from November 1, 2005 to April 30, 2009. However, the first document request contains no time limitation; only a few of the document requests include any such limit. *See* Gordon Decl., Ex. 4 [Doc. No. 2-4] at 8-11.

[5] OSU also contends that the movants should be required to show the documents they seek are not available from parties to the Texas case. This contention is based on inapposite legal authority or authority

**Standard of Decision**

Rule 45 authorizes this Court – as the issuing court – to enforce, quash, or modify the subpoena commanding OSU to produce documents. *See* Fed. R. Civ. P. 45(a)(2)(C). If the Court enters an order compelling production, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *See* Fed. R. Civ. P. 45(c)(2)(B)(ii). As pertinent here, the Court "must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter . . . or (iv) subjects a person to undue burden." *See* Fed. R. Civ. P. 45(c)(3)(A). Further, if a subpoena requires the disclosure of a trade secret or other confidential commercial information, the Court may quash or modify the subpoena or may order production of the confidential information under specified conditions. *See* Fed. R. Civ. P. 45(c)(3)(B).

"A party seeking to quash a subpoena duces tecum has a particularly heavy burden as contrasted to a party seeking only limited protection." *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir. 1982). Where protection is sought, and the relevance of the requested documents is not at issue, the district court should balance "the burden imposed upon the responding party if a protective order is not granted" against "the burden imposed on the requesting party if a protective order imposing conditions is granted." *Id.* Thus, in the *Petroleum Products* case, the court of appeals upheld an order conditioning a nonparty's production of documents on the payment of expenses incurred in the production ($8,782.98) because the burden on the requesting party to advance the cost of production was not "particularly harsh" and the nonparty did not stand to receive any benefit from the discovery. *See id.* at 623-24.

---

from other jurisdictions. The Tenth Circuit has stated that "a nonparty responding to a subpoena duces tecum is [not] in any different position than a party to the action." *See In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir. 1982).

**Discussion**

In this case, the relevance of the requested documents is unquestioned.  While OSU is not a party to the Texas case, its direct involvement in the underlying events and communications about the endowment program is clear, as shown by President Hargis' letter dated April 17, 2009.  Under these circumstances, the Court finds that OSU has not satisfied its burden to establish a sufficient ground to quash the subpoena entirely, although its objection to the breadth of specific requests is well-founded.  In fact, the movants oppose OSU's Cross-Motion by pointing to their efforts to narrow the subpoena and to set parameters that would produce a more reasonable number of documents.  Even utilizing the specific criteria set forth in correspondence from counsel for the movants dated June 9, 2011, more than 30,000 electronic documents are responsive to the subpoena. The effort required for OSU to screen this number of documents for privileged or confidential information is obvious.  Accordingly, the Court finds that OSU has sufficiently established that the burden imposed on it without protection from the original subpoena outweighs any burden that non-production might impose on the movants, who have made no effort to justify all 30,000 documents.

The primary issue presented by the instant motions and briefs is whether OSU will suffer an undue burden if it is required to produce the 6,571 documents identified pursuant to the movants' narrowed document request.  The parties' arguments in their briefs assume that OSU will screen these documents for privileged material and, presumably, withhold documents for which a claim of privilege is made, as authorized by Rule 45(d)(2)(A).[6]  Accordingly, notwithstanding OSU's arguments regarding privilege and privacy concerns, these concerns will be satisfied if privileged documents are withheld from production and confidential materials are produced pursuant to the

---

[6]  The movants suggest as an alternative that the Court could include a "claw back" or "quick peek" provision in an order compelling production.  OSU objects to this suggestion.  Although parties may agree to such arrangements, the Court declines to impose them on an unwilling party.

protective order entered in the Texas case. The Stipulation and Agreed Protective Order expressly authorizes a nonparty producing confidential information to claim its protection. *See* Gordon Decl., Ex. 6 [Doc. No. 2-8] at 3 (defining "Producing Party"). Thus, in the Court's view, this discovery dispute boils down to whether producing 6,571 documents would constitute an "undue burden."

Aside from the cost of the ESI search, which is calculated by OSU to be $1,761.24, the burden claimed by OSU is the amount of time that will be required for OSU's in-house counsel to review 6,571 documents individually to screen for protected information.[7] OSU has presented an estimate of the value of counsel's time (utilizing an imputed hourly rate) for the number of hours that may be required for its attorney, Mr. Fern, to complete the review process. OSU does not claim that requiring Mr. Fern to utilize his time in this way will materially impact its operations or prevent him from providing necessary legal services to OSU. Also, the Court understands that OSU will not actually incur any additional out-of-pocket expense for the document review. Thus, on the existing record, the apparent burden on OSU for complying with a modified subpoena for 6,571 documents is an operating expense of $1,761.24 and approximately 55 hours of work for in-house counsel.

While this burden is not insubstantial, the Court does not believe it constitutes an "undue burden" or a significant expense for which OSU should be compensated under Rule 45(c)(2)(B)(ii). The Court reaches this conclusion based on the nature of the litigation to which the documents pertain. While OSU is not directly involved in the Texas case, OSU has a financial interest in the outcome of the litigation and a close relationship with a party, Cowboy Athletics, Inc. The third party complaint against the movants alleges that they caused Cowboy Athletics, Inc. to pay more than $33 million in life insurance premiums and incur over $10 million in out-of-pocket expenses

---

[7] The additional $2,141.60 for manual recovery of certain documents was associated with the broader search that netted over 30,000 documents. No additional amount appears to be associated with the 6,571 documents.

for a bank loan, and that the movants were unjustly enriched by their receipt of commissions and bonuses in excess of $10 million.  Cowboy Athletics, Inc. seeks actual and punitive damages, plus interest and legal fees and expenses incurred in the lawsuit.  In light of the amounts at stake, the Court finds that requiring OSU to incur a cost of $1,761.24 to produce documents related to the claims asserted by Cowboy Athletics, Inc. and requiring OSU's in-house counsel to devote 55 hours to the case is not an undue burden or a litigation expense from which OSU should be protected.

For these reasons, the Court finds that OSU should be ordered to comply with the subpoena as modified by the movants to require production of approximately 6,571 documents, together with a privilege log showing any documents withheld from production.  The Court further finds that each party should bear its own costs associated with this discovery matter and the production to be made.

## Conclusion

OSU must produce the documents sought by the subpoena, as narrowed by subsequent requests of the movants and described in correspondence from their attorney dated June 9, 2011, and July 13, 2011, and identified to constitute approximately 6,571 documents.

IT IS THEREFORE ORDERED that the Motion to Compel Nonparty to Produce Documents in Response to Subpoena [Doc. No. 1] is GRANTED in part and DENIED in part as set forth herein. OSU shall comply with the subpoena, as modified by this Order, within 30 days from the date of this Order.

IT IS FURTHER ORDERED that the Cross-Motion to Quash Subpoena [Doc. No. 18] is DENIED.

IT IS SO ORDERED this 3rd day of November, 2011.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE